UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELIJAH JACKSON,

Plaintiff,

v.

DEPUTY GARCIA,

Defendant.

No. 2:24-cv-1513 CSK P

ORDER AND

FINDINGS & RECOMMENDATIONS

Plaintiff is a county jail inmate proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. Defendant's motion for summary judgment is before the Court. As discussed below, defendant's motion should be granted.

I. PLAINTIFF'S SECOND AMENDED COMPLAINT

In his unverified second amended complaint, plaintiff alleges the following. At all times relevant to plaintiff's allegations, plaintiff was an inmate at the Sacramento County Main Jail. Plaintiff sues Sacramento County Sheriff's Deputy Garcia, Badge #211. Plaintiff alleges that the day after he wrote a grievance against defendant Deputy Garcia, he falsely wrote plaintiff up for running a store. Plaintiff's custody status went up, and because of this false write-up, plaintiff is no longer able to be a worker at the county jail. (ECF No. 13 at 3.) Plaintiff claims that defendant retaliated against him after he reported an argument between himself and defendant. (Id.)

II. PROCEDURAL BACKGROUND

This action was filed on May 23, 2024. (ECF No. 1.) On July 31, 2024, the Court dismissed the complaint with leave to amend. (ECF No. 7.) Plaintiff filed an amended complaint on August 14, 2024, which the Court dismissed with leave to amend. (ECF Nos. 10, 11.) On September 19, 2024, plaintiff filed the second amended complaint. (ECF No. 13.) On April 22, 2025, the Court found plaintiff stated a cognizable retaliation claim and ordered service on defendant Deputy Garcia. (ECF No. 14.) Defendant Deputy Garcia filed an answer on September 15, 2025. (ECF No. 19.)

On April 10, 2026, defendant filed a motion for summary judgment. (ECF No. 22.) Plaintiff did not file an opposition or statement of non-opposition, and on June 30, 2026, the Court granted plaintiff an additional 21 days to respond. (ECF No. 23.) On July 16, 2026, plaintiff filed an opposition to the motion. (ECF No. 24.) On July 30, 2026, defendant filed a reply. (ECF No. 25.) Briefing is now complete.

III. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot

produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

///

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). A verified complaint may be considered as evidence at the summary judgment stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

On September 17, 2025, the Court provided plaintiff the requirements for opposing a motion for summary judgment. (ECF No. 21 at 6-7, 8 (citing Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).) By notice filed on April 10, 2026, along with the motion for summary judgment, defendant provided plaintiff notice of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure as required by Woods, 684 F.3d at 934. (ECF No. 22 at 2-3 (citing Rand, 154 F.3d at 957; Klingele 849 F.2d at 409).)

## IV. THE PARTIES' EVIDENCE

### A. Plaintiff Provided No Evidence

Plaintiff's second amended complaint is not verified. (ECF No. 13) Plaintiff's opposition is not verified, and he did not provide a declaration or any other evidence to support his claims. (ECF No. 24.)

B. Defendant's Evidence

Defendant provided his own declaration, and a copy of the incident report he wrote after the April 13, 2024 incident at issue here. (ECF No. 22-3 at 118-21.) In addition, defendant provided the declaration of James Hart, a Sergeant in the Compliance Unit for the Sacramento County Sheriff's Office. (ECF No. 22-3 at 20-22 (hereafter "Hart Decl.").) Officer Hart appended the following documents: pertinent portions of the Sacramento County Sheriff's Office Correctional Services Inmate Handbook (id. at 24-103); a copy of plaintiff's April 13, 2024 grievance and the April 16, 2024 response (id. at 105-06); other incident reports (id. at 108-14); plaintiff's April 20, 2024 grievance, and the April 25, 2024 response (id. at 115-16). Finally, defendant submitted the declaration of attorney Denny Yu who provided portions of plaintiff's December 30, 2025 deposition (Exhibit A), grievance No. 24-1305 (Exhibit B), and grievance No. 24-1306 (Exhibit C). (Id. at 6-14.)

V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on alternative grounds. First, defendant argues that plaintiff's First Amendment retaliation claim fails as a matter of law because the alleged retaliation did not chill plaintiff's exercise of his First Amendment rights, and the write-up by defendant advanced a legitimate correctional goal. (ECF No. 22 at 2.) Second, defendant contends that plaintiff failed to exhaust his administrative remedies. (Id.)

A. First Amendment Retaliation Claim

*1. Governing Standards*

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The adverse action "need not be an independent constitutional violation." Id.

The plaintiff need not show that his speech was actually suppressed; it is enough that the action "would chill or silence a person of ordinary firmness from future First Amendment activities," Brodheim, 584 F.3d at 1271 (quoting Rhodes, 408 F.3d at 568-69).

As to the fifth element, the plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Pratt, 65 F.3d at 806. In evaluating the reasons offered for conduct alleged to be retaliatory, courts "afford appropriate deference and flexibility" to prison officials. Id. at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

*2. Discussion*

On April 13, 2024, plaintiff was written up by defendant Deputy Garcia for passing "two soups" to another inmate. (ECF No. 22-3 at 121.) In his second amended complaint, plaintiff alleges he was written up for passing 2 noodles to another inmate. (ECF No. 13 at 3.) In grievance No. 24-1306, plaintiff stated that he brought "2 noodles" to a friend at the beginning of pill call. (ECF No. 22-3 at 106.) In the grievance response, Sgt. Caramello wrote that plaintiff was "grieving the fact he was caught passing soups to another inmate." (Id. at 105.) Defendant Deputy Garcia explained that two packets of Top Ramen are commonly referred to as "soups" to another inmate. (Garcia Decl., ¶ 5 (ECF No. 22-3 at 119).) It appears that the terms "soups" or "noodles" can be used interchangeably in the context of this case.

The Court finds that plaintiff's retaliation claim fails as a matter of law based on defendant's evidence that defendant Deputy Garcia's write-up issued to plaintiff for passing soups or noodles to another inmate violated Conduct Rule 2.05 of the Correctional Services Inmate Handbook, which prohibits inmates from buying, selling, trading, or loaning commissary items to or from other inmates. (Hart Decl. ¶¶ 6, 12, Ex. 1 at 65).) In his deposition, plaintiff confirmed he got the noodles from the commissary. (Pl.'s Dep. at 18 (ECF No. 22-3 at 7).) The prohibition in Conduct Rule 2.05 serves a legitimate correctional goal because it helps promote the health, safety, and welfare of the inmates and the jail facility by increasing security, and "reducing the risk of contraband being passed between inmates and the risk of inmates extorting each other for commissary items, cash, favors or other forms of payment, such as contraband or

narcotics." (Hart Decl. ¶ 13.) Plaintiff does not deny passing soups or noodles to another inmate at pill call. (Pl.'s Dep. at 18-19 (ECF No. 22-3 at 7-8).) Further, plaintiff did not address this element of his retaliation claim in his unverified opposition and did not submit any competent evidence to rebut this legitimate correctional goal. In order to survive summary judgment, plaintiff must adduce evidence as to each element of a retaliation claim. See Rhodes, 408 F.3d at 567-68. Thus, the Court need not address defendant's argument concerning the chilling effect element, and finds that defendant is entitled to summary judgment on plaintiff's retaliation claim because he failed to demonstrate the absence of a legitimate correctional goal.

B. Exhaustion of Administrative Remedies

Alternatively, defendant contends that plaintiff failed to exhaust his administrative remedies as to plaintiff's retaliation claim. (ECF No. 22-1 at 7-8.) Plaintiff does not address the issue of exhaustion in his opposition. (ECF No. 24.)

*1. The Prison Litigation Reform Act*

It is well established that the Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a federal civil rights action. See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 638-39 (2016); Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). The exhaustion requirement applies to all prisoner suits relating to prison life. See Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736 (2001); see also Ross, 578 U.S. at 640, 642-43). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). As discussed in Ross, there are no "special circumstances" exceptions to the exhaustion requirement:

> language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies. . . . [T]hat edict

> contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust -- irrespective of any "special circumstances."

Ross, 578 U.S. at 638-39 (internal citations omitted).

"Nonexhaustion" is an affirmative defense, and the defendant has the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014), overruled in part on other grounds by Perttu v. Richards, 605 U.S. 460 (2025). If the court concludes that an inmate has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (requiring dismissal where prisoner fails to exhaust administrative remedies before filing suit and tries to do so while case is pending); see Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (requiring dismissal without prejudice where prisoner fails to exhaust administrative remedies before submitting complaint to district court).

*2. Discussion*

In his second amended complaint, plaintiff refers to two grievances: Nos. 24-1306 and 24-1418. (ECF No. 13 at 4.) In his deposition, plaintiff refers to grievance Nos. 1305 and 1306. (ECF No. 22-3 at 16, 18.) He confirmed that grievance No. 1305 was the grievance he referred to in his second amended complaint. (Pl.'s Dep. at 27 (ECF No. 22-3 at 10).) In grievance No. 1305, plaintiff complained that he was interrupted braiding another inmate's hair, and defendant Deputy Garcia accused plaintiff of cursing at Garcia, which plaintiff denied. (ECF No. 22-3 at 16.) Plaintiff confirmed he did not appeal the response to grievance No. 1305. (Pl.'s Dep. at 27 (ECF No. 22-3 at 10).) In grievance No. 1306, plaintiff recounted giving another inmate noodles on April 13, 2024, and claimed defendant Deputy Garcia threatened plaintiff by saying he would never be a worker. (ECF No. 22-3 at 18.) Plaintiff confirmed that he did not appeal the response to grievance No. 1306. (Pl.'s Dep. at 30-31 (ECF No. 22-3 at 12-13).) The Court has reviewed both grievance Nos. 1305 and 1306, and neither mention that defendant Deputy Garcia retaliated against plaintiff based on a prior grievance plaintiff filed against Deputy Garcia. (ECF No. 22-3

at 16, 18.) But even assuming that either grievance could be liberally construed to constitute a retaliation claim, neither would exhaust plaintiff's retaliation claim because in his deposition plaintiff confirmed he did not appeal the rejection of these grievances.

In his second amended complaint, plaintiff also states he wrote a grievance on April 20, 2024, about Sgt. Caramella saying plaintiff had previous write-ups for running a store, which plaintiff denies, citing "grievance reply # 24-1418." (ECF No. 13 at 4.) Officer Hart provided a copy of plaintiff's grievance No. 24-1418, and it also does not mention that defendant Deputy Garcia retaliated against plaintiff based on a prior grievance plaintiff filed against Deputy Garcia, instead complaining that despite having a condition requiring no climbing, he is housed on the second tier. (ECF No. 22-3 at 115.) Plaintiff added that the grievance "is not directed towards Deputy Garcia." (Id.) This Court finds that grievance No. 24-1418 would not exhaust plaintiff's retaliation claim against defendant Deputy Garcia. Nevertheless, Officer Hart confirmed that plaintiff also failed to appeal grievance No. 24-1418. (Hart Decl. ¶ 11 (ECF No. 22-3 at 21).)

Therefore, defendant's motion for summary judgment based on plaintiff's failure to exhaust his retaliation claim against defendant Deputy Garcia should be granted.

## VI. PLAINTIFF'S REQUEST FOR CONTINUANCE

In his opposition, plaintiff "requests that this matter be continued." (ECF No. 24 at 2.) To the extent plaintiff's request for continuance could be construed as a request pursuant to Federal Rule of Civil Procedure 56(d), his request is denied for the following reasons.

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may issue any appropriate order, including deferring consideration of the motion for summary judgment or denying it, or allowing "time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d). The party requesting relief under Rule 56(d) must set forth in its affidavit or declaration: (1) "specific facts it hopes to elicit from further discovery," (2) that "the facts sought exist," and (3) that "the sought-after facts are essential to oppose summary judgment." Family Home & Finance Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008) (discussing former Rule 56(f)). "Failure to comply with these requirements is a proper ground for

denying discovery and proceeding to summary judgment." Id. (internal quotation marks omitted).

Here, plaintiff provided no affidavit and set forth no reasons why he needed a continuance.[1] In addition, plaintiff was previously granted an extension of time to oppose the motion for summary judgment on June 30, 2026. (ECF No. 23.) Plaintiff has failed to demonstrate that he is entitled to relief under Rule 56(d), and his request for continuance is denied.

## VII. CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to assign a district judge to this case;
2. Plaintiff's request for continuance (ECF No. 24) is denied.

Further, IT IS RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 22) be granted;
2. Judgment be entered for defendant Deputy Garcia, and this action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 24, 2026

/1/jack1513.msj.retal.fte.CJRA

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

[1] On September 3, 2026, after briefing on the motion for summary judgment was closed, plaintiff filed a document that may have been misfiled in this action. (ECF No. 26.) Plaintiff claims he was denied his "spiritual empowerment and enrichment" for 4.5 years and had to write grievances to obtain his satanic Bible. (Id.) This case does not involve such allegations. (See ECF No. 13.)